VIRGINIA REMINGTON, ADMINISTRATRIX (ESTATE OF WILLIAM K. REMINGTON) *v.* AETNA CASUALTY AND SURETY COMPANY
(15477)

Berdon, Norcott, Katz, Palmer and McDonald, Js.

Argued January 16—officially released April 8, 1997

*Christopher Carrozzella*, for the appellant (plaintiff).

*Michael P. Del Sole*, for the appellee (defendant).

*Opinion*

MCDONALD, J. The dispositive issue presented in this appeal is whether the trial court properly instructed the jury regarding the factors to be considered in determining whether an individual was a resident of an insured's household and, therefore, covered by an underinsured motorist automobile policy. The plaintiff, the administratrix of the estate of William K. Remington (William), brought an action to recover underinsured motorist benefits under an automobile liability policy (policy) issued to Virginia Remington[1] by the defendant, Aetna Casualty and Surety Company.

After a trial to a jury on the issue of liability, a verdict was returned in favor of the defendant.[2] The jury deter-

---

[1] Virginia Remington has brought this case solely in her capacity as the administratrix of William's estate. The fact that she is the named insured on the policy is entirely coincidental to the fact that she has brought this claim on behalf of William's estate. In order to avoid confusion between her role as named insured and her role as administratrix, we will use Virginia Remington when referring to her as the named insured and the plaintiff when discussing the claims she raises as administratrix.

[2] The jury trial that forms the basis of this appeal was ordered on remand from the Appellate Court. *Remington* v. *Aetna Casualty & Surety Co.*, 35

mined that William was not a resident of Virginia Remington's household and, therefore, not covered by the policy.[3] The trial court denied the plaintiff's motion to set aside the verdict and rendered judgment for the defendant. The plaintiff appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). On appeal, the plaintiff claims that the trial court improperly instructed the jury on the factors to be considered when determining whether William was a resident of Virginia Remington's household.[4] We agree.

The following evidence was before the jury. William was the stepson of Virginia Remington. He had lived with Virginia Remington during her marriage to his father and at times after his father's death in 1987. In May, 1990, William sustained fatal injuries in a motor vehicle accident caused by an underinsured motorist. At the time of the accident, William had a bedroom

Conn. App. 581, 646 A.2d 266 (1994). Initially, the trial court, *Hadden, J.,* granted the defendant's motion for summary judgment after determining, as a matter of law, that William was not a resident of Virginia Remington's household and, therefore, was not covered by the policy. The plaintiff appealed to the Appellate Court, which reversed the trial court's judgment and remanded the case for further proceedings after holding that summary judgment was inappropriate because genuine issues of material fact had yet to be resolved. Id. On remand, the trial court, *Corradino, J.,* bifurcated the issues of damages and liability.

[3] The jury's verdict form, dated November 3, 1995, stated: "We the Jury find for the Defendant, Aetna Casualty and Surety Company, and hereby conclude that William K. Remington was not a resident of the household of Virginia Remington at the time of his death."

[4] The plaintiff also claims that the trial court improperly: (1) failed to charge the jury that the policy was ambiguous and should be resolved in favor of coverage; and (2) refused to admit into evidence mail addressed to William that had been forwarded to Virginia Remington. In light of our resolution of the jury instruction issue, we need not reach the plaintiff's additional claims. Further, the plaintiff's argument that these issues should be considered because they are likely to surface on remand is not persuasive. We will not engage in speculation as to what evidence may be offered or instructions may be given at a future trial.

available to him at the house in Cheshire where Virginia Remington was living. He also stayed at an apartment at 1308 Dixwell Avenue in Hamden that Virginia Remington had found and leased in her name. She paid the rent and furnished the apartment, and maintained a telephone there in her name. Although William listed his Hamden address as his residence on his 1989 tax returns, he used Virginia Remington's Cheshire address for his mail and bills, including his unemployment checks.

Virginia Remington handled all of William's financial affairs throughout his life. Although he was thirty-eight years old at the time of his death, William was unable to live on his own. William's inability to live apart from Virginia Remington was attributed to a 1965 motor vehicle accident in which he suffered head injuries and temporary blindness. In 1988, following his father's death, William lived with his brother for a year. He then moved into his own apartment for two months. At both locations, Virginia Remington leased the apartment and paid the rent for William. Thereafter, he lived with Virginia Remington in Cheshire, except for one week during which he lived in a motel, until he moved to Hamden in February, 1990.

The policy was introduced as an exhibit. The policy listed Virginia Remington as the named insured and defined covered persons to include her or "any family member." Family member was defined as "a person related to [Virginia Remington] by blood, marriage or adoption who is a resident of [Virginia Remington's] household. This includes a ward or foster child."

The plaintiff requested that the trial court instruct the jury to consider a conglomeration of factors in determining household residency.[5] The trial court

[5] The plaintiff requested in part the following instruction: "The definition of a household reveals two primary characteristics: a close familial relationship and joint occupation of a dwelling. . . . A conglomeration of factors,

refused to give the plaintiff's requested charge, and instead, instructed the jury that it could take into consideration where William was living, where he kept his belongings, the frequency of his contact with Virginia Remington, where his mail was sent, the address he used for formal purposes such as voting and filing tax returns, whether he had his own room in Virginia Remington's household, and his intentions insofar as they indicated where he was actually living.[6] This instruction

including the intent of the decedent, William Remington, must be considered by you to determine whether Virginia Remington and [William] shared a dwelling. . . . Intent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular case. . . . Besides intent, the conglomeration of factors which you should consider in this case as indicia of household residency include the following:

"1. Whether [William] suffered from any physical or emotional disability;

"2. His familial relationship with his stepmother and other family members;

"3. The amount of time [William] spent living with his stepmother during the years prior to his death;

"4. The circumstances surrounding his absences from Virginia Remington;

"5. His sleeping arrangements at 155 Nob Hill Road;

"6. The location of [William's] clothes, paperwork and other personal belongings;

"7. The location where [William] received his mail and bills;

"8. The address where he was registered to vote;

"9. [William's] source of income;

"10. The person in charge of the management of [William's] financial affairs;

"11. The ability of [William] to maintain an independent living situation and the permanent measures [William] took to achieve this;

"12. Whether [William] was financially or emotionally capable of establishing and maintaining a household separate from his stepmother. . . .

"As you can see from this list, your focus in determining whether William Remington was a resident of Virginia Remington's household on May 21, 1990, should not only consider physical presence but also a multitude of other factors which focus upon whether [William] was capable of establishing and maintaining a household on his own."

[6] The trial court instructed the jury in relevant part: "In defining 'resident of [Virginia Remington's] household,' you use the ordinary dictionary meaning of the term 'household.' A household is a domicile. A household is a domestic establishment, including the members of a family who live under the same roof.

"Thus, there must be, one, a close familial relationship; and, two, joint occupancy of a dwelling. A dwelling must be shared. Another one of our

failed to inform the jury that William's emotional or financial ability to establish a household separate from Virginia Remington was a factor to be considered. The plaintiff also requested an instruction that an individual could have more than one residence.[7] That instruction also was not given.

This court has recognized that a trier of fact must determine where an individual resides by analyzing the facts unique to each case. *Griffith* v. *Security Ins. Co.*, 167 Conn. 450, 458, 356 A.2d 94 (1975); *Rathbun* v. *Aetna Casualty & Surety Co.*, 144 Conn. 165, 168, 128 A.2d 327 (1956). In undertaking this analysis, the trier

cases says that a household is a social unit comprised of those living together in the same dwelling place. . . .

"Now, what is the second element? The second element is, did . . . William and Virginia Remington live in the same dwelling place? Was William a resident of Virginia Remington's dwelling place?

"You must determine if William can be said to have actually lived in the household of Virginia Remington or jointly occupied the same dwelling. How do you determine these matters? You would consider where William was actually living at the time of his death. How long had he lived there? When was the last time he lived with Virginia Remington, and for how long?

"You will remember that there was testimony that William stayed with Virginia Remington on two occasions in early 1990, perhaps right at the end of 1989 in December. And that he lived in an apartment for a few months prior to his death.

"You will also consider the contacts he had with Virginia Remington at her Cheshire address through visits. For example, the fact that his mail was sent to . . . Virginia Remington's Cheshire home. You will consider what belongings of his were kept at the home of Virginia Remington prior to his death.

"Was there any evidence he had an assigned room or bedroom at the Cheshire household of Virginia Remington? You will consider where he received his mail, including unemployment checks, where he was registered to vote, and where he listed his address, for example, on income tax returns.

"Factors of intent do have a bearing, but only as to how they relate to the question of where William was actually living."

[7] That request asked for the following instruction: "In this particular case you have heard evidence that William Remington lived at 155 Nob Hill Road, Cheshire, from approximately January, 1990, until the middle of February, 1990, when he began living at 1308 Dixwell Avenue, Hamden. Each address constitutes a residence. Connecticut law recognizes that individuals may have multiple residences at one time."

of fact must consider a conglomeration of factors. *Middlesex Mutual Assurance Co.* v. *Walsh,* 218 Conn. 681, 686, 590 A.2d 957 (1991). These factors include: the intent of the individual; the frequency of contact between the individual and other household inhabitants; the frequency with which the individual spends time at the household; the maintenance of a separate residence for the individual; whether the individual is emotionally and financially capable of establishing and maintaining a residence independent of the household; the location of personal belongings; the location of and address used for personnel and business records; the address at which mail is received; and the address used for formal purposes such as voting, licenses, and income tax filings. Id., 686–87, 690.

The trial court here omitted some of these factors when it instructed the jury what factors should be considered in determining William's household residency. The omitted factors included the frequency with which the individual spends time at the household, whether the individual is emotionally and financially capable of establishing and maintaining a residence independent of the household, and the location of and address used for personnel and business records. The court indicated that the decisive factor was whether William and Virginia Remington shared the same roof or dwelling. In essence, the trial court instructed the jury that William and Virginia Remington must share the "same roof" and that the "same roof" meant *one* roof. This was improper, as the description of a household and the determination of who resides in that household are decisions to be made upon consideration of the factual circumstances involved in each case. The jury reasonably might have concluded that wherever he stayed, William always returned to be with Virginia Remington, and that the apartment in Hamden was nothing more than a home away from home. William's inability to live apart from

Virginia Remington, therefore, was a circumstance to be considered. Furthermore, the focus of the charge was too narrow because a person may have more than one residence. *Taylor* v. *Taylor*, 168 Conn. 619, 621, 362 A.2d 795 (1975); see also *Griffith* v. *Security Ins. Co.*, supra, 167 Conn. 461 (*Bogdanski, J.*, dissenting), and cases cited therein.

"[A] jury charge is to be considered from the standpoint of its effect on the jury in guiding them to a correct verdict. . . . A jury charge must be correct in law, adapted to the issues and sufficient for the guidance of the jury. . . . A charge is not to be critically dissected for purposes of discovering possible inaccuracies . . . but rather, the initial charge and any supplemental charge are to be read as a whole. . . . The ultimate test of a court's instructions is whether, taken as a whole, they fairly and adequately present the case to a jury in such a way that injustice is not done to either party under the established rules of law." (Citations omitted; internal quotation marks omitted.) *Ellice* v. *INA Life Ins. Co. of New York*, 208 Conn. 218, 226, 544 A.2d 623 (1988).

The trial court's instruction did not meet the requirement established in *Middlesex Mutual Assurance Co.* that many factors under the particular circumstances must be included in the determination of household residency. Accordingly, we conclude that the trial court's charge was improper.

We must next determine whether that improper instruction was harmful because it would have been likely to affect the jury's verdict. See *Anonymous* v. *Norton*, 168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975); *Blancato* v. *Randino*, 33 Conn. App. 44, 49, 632 A.2d 1144, cert. denied, 228 Conn. 916, 636 A.2d 846 (1993). We conclude that this improper instruction was harmful

as it went to the central issue before the jury, namely, whether William was a resident of Virginia Remington's household. Accordingly, a new trial is required.

The judgment is reversed, and the case is remanded for a new trial.

In this opinion the other justices concurred.