[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The question presented to the court by the parties on this Application to Vacate Arbitration Award is whether the arbitrators correctly applied the law in determining that Christopher Ferro was not an individual covered by an insurance policy issued by the defendant Nationwide Insurance Company. The more difficult issue for the court, however, is applying the proper standard of review — deferential or de novo
— to such an arbitration to comply with the statutes and policies governing arbitrations.
The plaintiff is Robert Miller who was badly injured when his car collided with one owned by Chris Bishop and driven by Christopher Ferro. It is undisputed that the accident was the fault of Mr. Ferro, who was killed in the accident. It is also undisputed that the damages suffered by Robert Miller would exceed the combined insurance coverage at issue in this case.
Ferro had an automobile liability policy with Infinity Insurance that provided benefits in the amount of $20,000/$40,000. That policy was paid in full. Ferro's mother, Paula Ferro, carried an automobile policy with Nationwide Insurance Company which provided liability coverage of $100,000. The parties present the issue of whether Christopher Ferro was also covered by that policy so that an additional $100,000 is available to compensate the plaintiff Robert Miller for his serious injuries.
The matter was the subject of an arbitration that occurred in August, 1999. The three-person arbitration panel by a vote of two to one determined that Christopher Ferro was not a covered individual under the Nationwide policy. The policy provided coverage to the named insured Paula Ferro "and a relative." [Emphasis in original policy]. The policy defined "relative" as follows:
 one who regularly lives in your household and is related to you by blood, marriage, or adoption. . . . A relative may live temporarily outside your
household. [Emphasis in original policy].
The majority of the panel found that Christopher Ferro, who had recently been released from jail, "was not in regular contact with his mother and if he slept at her apartment, it was on a very infrequent, if not rare occasion." Arbitration Award, p. 1. The panel construed the contract language "one who regularly lives" in the insured's household, and CT Page 7879 determined that Christopher Ferro did not regularly live with his mother, and thus did not meet the definition of a covered relative.
The plaintiff claims however that the arbitrators erred in their interpretation of the law. He claims that the contract language contravenes the requirements of Conn. Gen. Stat. § 38a-335(d) which provides:
 (d) With respect to the insured motor vehicle, the coverage afforded under the bodily injury liability and property damage liability provisions in any such policy shall apply to the named insured and relatives residing in his household unless any such person is specifically excluded by endorsement.
The plaintiff points to the language of the statute that requires that bodily injury liability provisions extend to "relatives residing in his [the insured's] household," and distinguishes this language from the more restrictive language in the Nationwide contract that extends coverage only to "one who regularly lives in your household and is related to you. . . ." [Emphasis supplied.]
Indeed the Supreme Court has listed the factors to consider in determining under such a policy whether the statutory definition of a relative who is a "resident of the same household" has been met.Middlesex Mutual Assurance Co. v. Walsh, 218 Conn. 681, 686 (1991). In a case involving the identical policy language as that in the Ferro/Nationwide contract, the Supreme Court culled those factors fromWalsh and listed those "conglomeration of factors" as:
 the intent of the individual; the frequency of contact between the individual and other household inhabitants; the frequency with which the individual spends time at the household; the maintenance of a separate residence for the individual; whether the individual is emotionally and financially capable of establishing and maintaining a residence independent of the household; the location of personal belongings; the location of and address used for personnel and business records; the address at which mail is received; and the address used for formal purposes such as voting, licenses, and income tax filings.
Remington v. Aetna Casualty Surety Co., 240 Conn. 309, 315 (1997). In that case, the court rejected an analysis that focused on sharing the "same roof" as the decisive factor. In light of the court's analysis in CT Page 7880Walsh and Remington, supra, it is also clear that the mere determination of whether the relative "regularly" resides in the household is also not dispositive. Rather the determination of whether a relative is or is not residing in the household is one that cannot turn exclusively on the adverb "regularly."
But the majority of the arbitration panel focused on the word "regularly" to such an extent that it seems apparent that that term was
dispositive for their award. The Award states:
 The claimant argues that when applying the conglomeration of factors test to the customary policy language of "resident relative," a finding of coverage is warranted. Indeed there was evidence presented which could support a finding that the residence in question was at least a residence for Mr. Ferro. But the language in the Nationwide policy is more restrictive and we are bound to interpret it, and apply it with common sense and in accordance with normal usage.
Therefore, if the statute and its interpreting case law applies, the arbitration panel did not utilize the correct definition in determining whether Christopher Ferro was covered by the policy. So the next question is whether the statute applies.
Conn. Gen. Stat. § 38a-335(d) applies to bodily injury liability coverage "[w]ith respect to the insured motor vehicle. . . ." The defendant Nationwide argues that Mr. Ferro was not driving "the insured motor vehicle" covered by Paula Ferro's policy but rather was driving a car owned by Chris Bishop. The defendant asserts that the holding ofMiddlesex Insurance Co. v. Rady, 34 Conn. App. 679 (1994), supports the proposition that unless Christopher Ferro was driving an insured motor vehicle the remainder of subsection (d) is inapplicable to the present case.
The Rady case, supra, certainly stands for the proposition that one must look carefully at the words of the statute and in the corresponding section of the policy to determine whether the statute is being properly applied. But beyond that, it is a case circumscribed by a separate statutory section and different contract language. In that case the Appellate Court compared the provisions of Conn. Gen. Stat. § 38a-336
regarding uninsured and underinsured motorist coverage with the Middlesex policy defining who were the "persons insured thereunder." The Court determined that the claimant was not within the definition and determined that public policy did not require any other outcome. CT Page 7881
In this case, the language in question is not "person insured thereunder" with its inclusions and exclusions but the term "insured motor vehicle." On the first of two declarations pages the "insured vehicle" is listed as a 1993 Ford Escort owned by Paula Ferro. But of course that car was not involved in the accident. Subsequent sections of the policy provide, however, that the Ford Escort is not the only insured vehicle. Under the Auto Liability section of the policy, on page L2, the policy also states:
 This coverage also applies to certain other motor vehicles as follows: 3. A motor vehicle owned by a non-member of your household and not covered in Item 1. of this section. a) This applies only to policies issued to individual persons (not organizations) and while the vehicle is being used by you or a relative.
It protects the user, and any person or organization, except as noted below in b), who does not own the vehicle but is legally liable for its use.
[Emphasis in original.]
The only possible construction of this language is that a car owned by someone else, such as Bishop, but borrowed by the named insured or a relative with permission is also an insured vehicle for purposes of the bodily injury liability coverage of the Nationwide policy. Thus when Conn. Gen. Stat. § 38a-335 (d) refers to "the insured motor vehicle" and mandates liability coverage for "relatives residing in [the insured's] household," that entire statutory section is applicable to the Ferro/Nationwide policy. The Rady case, while informative, does not control the interpretation of the statutory and contract language here.
So having determined that the statutory definition of "relative residing in his household" trumps the more restrictive language of "one who regularly lives in your household" used in the Nationwide policy, where does that leave the claimant? The majority of the arbitration panel used the incorrect legal standard by which to determine whether Christopher Ferro was a covered relative for purposes of liability under the policy. But the question still remains whether the misapplication of the law dictates that the arbitration be vacated.
Conn. Gen. Stat. § 52-418 limits the authority of the court to vacate an arbitration award only to the following situations:
 (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident CT Page 7882 partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.
The Application to Vacate Arbitration Award is premised upon the last ground — that the arbitrators imperfectly executed their powers — and also on a second basis not specifically set forth in the statute but well recognized in our law — that the award violates the public policy of the State of Connecticut by not applying the correct statutory interpretation of resident relative.
Although this case grew out of a dispute concerning underinsured motorist coverage, it nonetheless a involves a voluntary arbitration proceeding. Upon inquiry of the court, both sides concur and stipulate that the award was not made pursuant to a mandatory arbitration.[1]
In a voluntary arbitration such as this one, case law teaches that ordinarily the award is not subject to de novo review even for errors of law so long as the award conforms to the submission (and there is no dispute about that in this case). See Saturn Construction Co. v. PremierRoofing Co., 238 Conn. 293, 303-04 (1996) (erroneous interpretation of statute regarding an award of interest not sufficient to permit de novo
review; award upheld); see also Hodgson and Parley, Alternative Dispute Resolution in Connecticut's Courts, § 6.6.2.1 (1998).
After the parties had argued this case to this court, the Connecticut Supreme Court decided the case of Schoonmaker v. Cummings and Lockwood,P.C., 252 Conn. 416 (2000), which holds that when an arbitrator has been called upon to determine whether a contract violates a legitimate and clearly established public policy, and where such a claim is legitimate and colorable, Id., 429, the court must utilize de novo review.
So was this a legitimate and colorable claim in this case? Was the error of the arbitrators more like the erroneous determination to allow interest on the award, as in Saturn Construction, supra, or more like the erroneous reinstatement of an employee convicted of embezzlement, that violated public policy, as in Board of Education v. Local 566,43 Conn. App. 499, 683 A.2d 1036 (1996)? CT Page 7883
If it is the former, it is likely that it states no "legitimate and colorable claim of a violation of public policy," id., n. 7, and deferential review is all that is required, since "[c]ourts will not review the evidence nor, where the submission is unrestricted, will they review the arbitrators' decision of the legal questions involved." (Internal quotation marks omitted.) Caldor, Inc. v. Thornton,191 Conn. 336, 340-41, 464 A.2d 785 (1983), aff'd, 472 U.S. 703,105 S.Ct. 2914, 86 L.Ed.2d 557 (1985); see also Stratford v. Intl. Assn. ofFirefighters, 248 Conn. 108, 115, 728 A.2d 1063 (1999). If it is the latter, then the court employs "a heightened standard of judicial review of arbitral conclusions, despite the traditional high level of deference [otherwise] afforded to arbitrators' decisions. . . ." Schoonmakerv. Cummings and Lockwood, P.C., supra, 428.
This court concludes that it is the public policy of this State "that an insurer may not reduce its liability for underinsured motorist coverage by contract except to the extent that the relevant regulations expressly authorize." Middlesex Insurance Co. v. Quinn, 225 Conn. 257,261 (1993), citing Lowrey v. Valley Forge Insurance Co., 224 Conn. 152,156 (1992). It is true that in the Quinn case, and its close companion,Middlesex Insurance Co. v. Castellano, 225 Conn. 339 (1993), the court found no such violation when an insurer declined to provide coverage to relatives of a named insured if those relatives owned a car on their own.[2] That does not alter the fact that both cases continue to stand for the proposition that strict adherence by insurers to the coverage mandated by statutes and regulations is the public policy of this state.
It follows, then, that a misapplication by the arbitration panel of the law regarding coverage in this case rises to the level of a violation of public policy, at least one sufficiently "legitimate and colorable" to provide this court with guidance about the appropriate standard of review to utilize in examining the award of the arbitrators. Exercising de novo
review, this court finds that the method by which the arbitrators arrived at their determination — the application of the more restrictive policy language rather than the broader definition provided by the statute and case law — was one that resulted from the arbitrators having "exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." Conn. Gen. Stat. § 52-418(a)(4).
Accordingly, this court grants the Application to Vacate the Arbitration Award.
Patty Jenkins Pittman, Judge CT Page 7884