239 F.3d 127 (2nd Cir. 2000)
 DAVID ISRAEL, individually and as personal representative of the estate of Susan Israel, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND STATE FARM FIRE AND CASUALTY COMPANY, Defendants-Appellees.
 Docket No. 99-7810L & 00-7188con
August Term 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: September 12, 2000
Questions Certified to Connecticut Supreme Court: December 27, 2000
 
 Appeal from judgment of the United States District Court for the District of Connecticut, Janet Bond Arterton, J., granting defendants' motion for summary judgment on the ground that plaintiff David Israel's failure to maintain underlying insurance precluded his umbrella policy claim. Questions concerning appropriate construction of insurance provisions certified to the Connecticut Supreme Court.
 FEINBERG, Circuit Judge:DAVID M. COHEN, Stamford, CT (Wofsey, Rosen, Kweskin & Kuriansky, LLP), for Plaintiff-Appellant David Israel, individually and as personal representative of the estate of Susan Israel.
 DANIEL P. SCAPELLATI, Hartford, CT (Halloran & Sage, LLP), for Defendants- Appellees, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company.
 Before: FEINBERG, CABRANES and PARKER, Circuit Judges.
 
 
 1
 Plaintiff David Israel, individually and as personal representative of the estate of Susan Israel, appeals from a judgment of the United States District Court for the District of Connecticut, Janet Bond Arterton, J., granting the motion of State Farm Fire and Casualty Company (State Farm)for summary judgment.[1] The basis of the judge's decision was that the umbrella insurance policy sued on did not provide uninsured motorist coverage for David and Susan Israel's losses because underlying uninsured motorist coverage had not been maintained. We believe that the appropriate interpretation of crucial policy language is not clear under Connecticut law. For the reasons stated below, we conclude that we should certify two controlling questions of law to the Connecticut Supreme Court.
 
 
 2
 Accordingly, it is hereby ORDERED that the Clerk of the Court transmit to the Connecticut Supreme Court a Certificate in the form attached, together with a complete set of the briefs, appendix and record filed by the parties with this court. This panel retains jurisdiction so that, after we receive a response from the Connecticut Supreme Court, we may dispose of the appeal. The parties are further ORDERED to bear equally such costs and fees, if any, as may be required by the Connecticut Supreme Court.
 
 CERTIFICATE
 
 3
 Certificate to the Connecticut Supreme Court pursuant to 2d Cir. R. § 0.27 and 1999 Conn. Acts 99-107 (Reg. Sess.).
 
 I. The Questions of Law to Be Answered
 
 4
 1. Where an umbrella insurance policy providing uninsured motorist coverage states that (1) coverage will not apply if underlying insurance is not maintained; (2) coverage may not be provided if the insured fails to maintain underlying coverage; and (3) if underlying coverage is not maintained, the insured will be responsible for the underlying limit amount of any loss, is the policy ambiguous as to whether it completely denies uninsured motorist coverage to an insured who fails to maintain underlying insurance or whether in that event it only requires the insured to bear responsibility for the loss up to the underlying limit amount, and should the policy therefore be interpreted to provide umbrella uninsured motorist coverage in whole or in part to an insured who has failed to maintain underlying coverage?
 
 
 5
 2. Where the declarations page of an insurance policy states, "If this policy is terminated we will give you and the Mortgagee/Lienholder written notice in compliance with the policy or as required by law" and the definitions section of the policy defines "you" as any insured, is the policy ambiguous as to whether "you" refers to the named insured only or to all insureds and should the policy therefore be interpreted to require only the named insured to maintain underlying insurance?
 
 
 6
 II. Statement of Facts Relevant to the Certified Questions
 
 
 7
 The facts in this case are undisputed. From November 1994 until October 1996, David Israel worked as a commercial pilot, flying out of Bridgeport, Connecticut. Israel stayed in Stamford, Connecticut, at the home of his mother and his stepfather (Lenore and William Gunther) when he was working, and stayed in Florida with his wife (Susan Israel) when he was not. As a result, Israel spent over two-thirds of his nights in the Gunthers' Stamford residence during this time period.
 
 
 8
 In May 1996, the car in which David and Susan Israel were traveling in Florida was struck head-on by a car driven by Melvin Root. Because of the severity of the damage to their car, David and Susan Israel were trapped in the automobile for some time, and during that time, David Israel watched his wife die as a result of injuries she sustained in the accident. David Israel survived, but was seriously injured. Mr. Root, who was also killed in the accident, was found to have alcohol and marijuana in his bloodstream. The police investigation that followed found that Mr. Root caused the accident, and for the purposes of this lawsuit, it has been conceded that David and Susan Israel were in no way responsible for the collision.
 
 
 9
 During the relevant time period, Lenore and William Gunther were the named insureds in an umbrella policy[2] issued by State Farm that provided up to $1 million in personal liability and uninsured motorist coverage. According to the definitions section of the policy, those insured under it include those "named insured's relatives" who are "residents of the named insured's household" (emphasis in original).
 
 
 10
 A numbered, nine-page booklet titled "Personal Liability Umbrella Policy" (sometimes hereafter referred to as "the nine-page booklet") sets out the definitions of terms used in the policy, the personal liability coverage provided by the policy, exclusions from the policy, the insured's duties to State Farm, and other conditions of the policy. An unnumbered addendum to this booklet, titled "Uninsured Motor Vehicle Coverage" (uninsured motorist addendum) describes the uninsured motor vehicle coverage provided by the umbrella policy.
 
 
 11
 The portion of the umbrella policy titled "Your Duties to Us," found in the nine-page booklet, includes the following language:
 
 
 12
 We [State Farm] may not provide coverage if you refuse to... maintain your underlying insurance. All insurance listed in the Declarations must be maintained at all times. The limits listed in the Declarations are the minimum you must maintain. If the required underlying limits are not maintained, you will be responsible for the underlying limit amount of any loss. If any of your underlying coverage limits are used up, reduced or canceled:
 
 
 13
 a. you must try to replace the coverage; and
 
 
 14
 b. you must notify us immediately.
 
 
 15
 You must maintain your underlying coverage if you travel outside the United States or Canada. If the minimum underlying limits we require are not available, you must obtain the highest legally available limit.
 
 
 16
 (Emphasis in original.) The uninsured motorist addendum provides, "You must maintain underlying limits for uninsured motor vehicle coverage equal to the limits listed in the Declarations. If these underlying limits are not maintained, this coverage will not apply" (emphasis in original). At the time of the accident, while Lenore and William Gunther maintained this underlying uninsured motorist insurance for their vehicle, David Israel did not for his.
 
 
 17
 Melvin Root was insured, but his insurance failed to fully compensate David Israel and the estate of Susan Israel for their injuries. After exhausting this coverage, David Israel, on behalf of himself and the estate of Susan Israel, made a claim for uninsured motorist coverage under his mother's umbrella policy.[3] State Farm denied the claim. David Israel then brought the present action in Connecticut Superior Court, and State Farm removed the case to federal district court on the basis of diversity jurisdiction.
 
 
 18
 Following discovery, State Farm moved for summary judgment, asserting that (1) David Israel was not a resident of his mother's household and so was not covered by the umbrella policy; and (2) even if David Israel were a resident of his mother's household, his failure to maintain underlying uninsured motorist coverage precluded his claims under the policy.[4] In February 2000, Judge Arterton granted State Farm's summary judgment motion, holding that while Israel was a resident of his mother's household under Connecticut law and thus an "insured" under the policy, his failure to maintain underlying uninsured motorist coverage precluded any claim under the uninsured motorist coverage of the umbrella policy.
 
 
 19
 This appeal followed.
 
 
 20
 III. Nature of the Controversy in Which the Questions Arose
 
 
 21
 On appeal, David Israel argues that the umbrella policy, properly interpreted, does not completely deny coverage to an insured who fails to maintain underlying insurance, but only requires the insured to bear responsibility for any loss up to the underlying limits before gaining access to the umbrella coverage. Israel also argues that even if underlying insurance had to be maintained, his mother's maintenance of such coverage on her own car satisfies the requirement. State Farm disputes both arguments and also asserts that in any case, David Israel was not a resident of his mother's household and so is not insured under the policy. Thus, this appeal presents three questions: (1) was David Israel a "resident" of the Gunthers' Stamford household at the time of the accident; (2) under the umbrella policy, is the effect of a failure to maintain underlying insurance the complete denial of umbrella coverage for Israel or simply that Israel will be responsible for any loss up to the underlying limits before gaining access to the umbrella coverage; and (3) assuming that the policy completely precludes coverage in the event of a failure to maintain underlying insurance, are the policy's requirements satisfied by Lenore Gunther's maintenance of such insurance?
 
 
 22
 As a federal court exercising diversity jurisdiction, we follow applicable state law--here, the law of Connecticut. See, e.g., Belmac Hygiene, Inc. v. Belmac Corp., 121 F.3d 835, 840 (2d Cir. 1997). The district court's grant of summary judgment is reviewed de novo, taking all factual inferences in favor of the non-moving party. See, e.g., Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 343 (2d Cir. 1999).
 
 A. David Israel's Connecticut Residency
 
 23
 Under Connecticut law, "residence" is determined by reference to a number of factors, including the intent of the individual, the frequency of contact with a household and other household members, whether an individual maintains a separate residence, the location of personal belongings, the capacity of an individual to maintain an independent household, the address used for personnel and business purposes, the address at which mail is received and the address used for formal purposes such as voting and filing taxes. See Remington v. Aetna Cas. and Sur. Co., 692 A.2d 399, 402 (Conn. 1997).
 
 
 24
 As noted above, David Israel spent about two-thirds of his time in his mother's Stamford household. In Stamford, he had his own room, cooked his own meals, kept about half of his clothes, a computer and various files, did chores and maintenance work and garaged a car that he owned. He received some of his mail at the Stamford address, as well as communications from his union and from his employer, and when Susan Israel visited him in Connecticut, she stayed with him at the Stamford house. While it is true, as State Farm points out, that David Israel owned a home in Florida, received mail there and was licensed to drive and registered to vote in Florida, this does not necessarily preclude his maintenance of a Connecticut residence as well. Under Connecticut law an individual may have more than one residence. See id. Given that Israel spent a majority of his time at the Stamford residence, and exhibited significant day-to-day connections with the household, we agree with the district court that he is appropriately considered a resident of the Stamford home and, thus, an "insured" under the terms of the umbrella policy.
 
 
 25
 B. Effects of Failure to Maintain Underlying Insurance
 
 
 26
 The remaining issues in the case involve the appropriate interpretation of the policy's provisions in connection with the failure to maintain underlying uninsured motorist coverage. These issues are more perplexing. As noted above, the umbrella policy consists of the nine-page booklet, the uninsured motorist addendum, the declarations page, and four pages of endorsements. The "Your Duties to Us" section of the nine-page booklet and the uninsured motorist addendum both address the effect of a failure to maintain underlying insurance. The former states that "[i]f the required underlying limits are not maintained, you will be responsible for the underlying limit amount of any loss." However, the latter provides that "[i]f these underlying limits are not maintained, this coverage will not apply." Thus, one provision suggests that in such a circumstance, an insured will merely be responsible for any loss up to the underlying limits before gaining access to the umbrella coverage, while the other provision indicates that the umbrella coverage will not be available to the insured at all. David Israel argues that these two provisions when read together create a fundamental ambiguity regarding the effect of an insured's failure to maintain underlying coverage.[5]
 
 
 27
 State Farm responds that the "Your Duties to Us" section also states that "We may not provide coverage if you refuse to... maintain your underlying insurance." The uninsured motorist addendum's more definite statement that coverage will not be available if underlying limits are not maintained is in no way inconsistent with this earlier provision, State Farm argues, and the addendum's more definite statement may not simply be read out of the policy. State Farm also argues that in any case, as found by the district court, the "Your Duties to Us" section of the umbrella policy applies in the context of liability coverage only, and is not relevant to uninsured motorist claims. In support of this argument, State Farm points to language in the "Your Duties to Us" section requiring an insured to notify State Farm if a suit is filed against him or her, a duty that would appear to be applicable only in the context of liability coverage, where the insured would be a defendant.
 
 
 28
 Interpreting the provisions of the policy addressing underlying coverage thus requires a determination of whether the "Your Duties to Us" section applies to the uninsured motorist coverage and, if so, a further determination of whether the "Your Duties to Us" language, in combination with the language in the uninsured motorist addendum, creates an ambiguity.
 
 
 29
 With regard to the applicability of the "Your Duties to Us" section, Israel argues that the uninsured motorist addendum must necessarily be read with reference to the entire nine-page "Personal Liability Umbrella Policy" booklet, including the "Your Duties to Us" section. For instance, Israel points out that while the uninsured motorist addendum does not define such crucial terms as "you" or "insured," any detailed understanding of the coverage described in the uninsured motorist addendum necessarily depends on the definitions of these terms as set out in the nine-page booklet. Israel argues that nothing in the policy language suggests that while the "Definitions" section of the nine-page booklet applies to the uninsured motorist addendum, the "Your Duties to Us" section does not. Israel also disputes the district court's holding that all the conditions imposed in the latter "clearly refer to the liability cover[age] of the policy" (emphasis in original). He argues that on the contrary, these conditions must also be read as applying to uninsured motorist coverage, since, for example, this section is the only place in the policy that states that the insured is required to notify State Farm of an accident, an obvious prerequisite to any uninsured motorist claim. Finally, while Israel does not raise this point, it is also worth noting that the uninsured motorist addendum expressly states, "All other provisions of this policy apply," thereby arguably incorporating the "Your Duties to Us" section of the nine- page booklet.
 
 
 30
 If the "Your Duties to Us" section does apply to the uninsured motorist coverage, the question arises whether the underlying coverage provision in "Your Duties to Us" conflicts with the underlying coverage provision in the uninsured motorist addendum, creating an ambiguity under Connecticut law sufficient to justify construing the policy against the insurer as drafter of the insurance contract. We have found no Connecticut precedent--and none has been cited to us--that is directly on point. Both parties point out that Connecticut courts have set out broad state-law principles of policy construction and interpretation that must provide the background for resolving the present question. Under Connecticut law, terms in a policy are to be construed "from the perspective of a reasonable layperson in the position of the purchaser of the policy," Ceci v. Nat'l Indem. Co., 622 A.2d 545, 547 (Conn. 1993), and any ambiguity in the policy's terms must be construed against the insurer as drafter of the contract, see Streitweiser v. Middlesex Mut. Assurance Co., 593 A.2d 498, 500 (Conn. 1991). On the other hand, these rules may not be applied unless the terms or provisions in question are indeed ambiguous, and such ambiguity is not demonstrated by the mere fact that the parties advance different interpretations of the language in question. See Stephan v. Pennsylvania Gen. Ins. Co., 621 A.2d 258, 261 (Conn. 1993). In addition, we note that in the context of primary uninsured motorist policies, the Connecticut courts have repeatedly held that a limitation of liability on uninsured motorist coverage must be construed "most strongly" against the insurer. See, e.g., Streitweiser, 593 A.2d at 500; American Universal Ins. Co. v. DelGreco, 530 A.2d 171, 181 (Conn. 1987).
 
 
 31
 While we are aware of these general principles, we are not sure how the Connecticut courts would apply them to the specific facts of this case. In particular, it is not clear to us whether Connecticut's strong public policy in favor of uninsured motorist coverage, see generally Streitweiser, 593 A.2d at 500-01, and the resulting presumption against an insurer limiting this coverage, see id. at 500, have any application in the context of an umbrella policy generally or in this case in particular. In addition, we have found no case--nor has one been cited to us--that specifically addresses whether a policy is ambiguous when it first states that in a particular circumstance coverage "may" not be provided and then states that in the same circumstance coverage "will" not be provided. Nor are we confident that under Connecticut law a policy's specification of a particular result of a failure to maintain underlying insurance (e.g., responsibility for any loss up to the underlying limits) implies as a matter of law that the specified result will be the sole consequence of the failure to maintain coverage.
 
 
 32
 C. Lenore Gunther's Maintenance of Underlying Insurance
 
 
 33
 Finally, David Israel argues that even if the umbrella policy is appropriately read as precluding all coverage when underlying uninsured motorist coverage is not maintained, his claim should nevertheless be honored, since his mother (Lenore Gunther) maintained such coverage for the Gunthers' automobile. Under Israel's interpretation, only the specifically named insureds (i.e., Lenore and William Gunther) must maintain underlying coverage in order for all insureds to gain the benefit of the umbrella coverage.
 
 
 34
 The nine-page booklet portion of the umbrella policy states, "In this policy, `you' and `your' refer to the `insured' as defined" (emphasis in original); "insured" is defined to include not only the named insured, but (among others) all relatives residing with the named insured. The uninsured motorist addendum indicates, "You must maintain underlying limits for uninsured motor vehicle coverage equal to the limits listed in the Declarations" (emphasis in original). In turn, the declarations page of the policy provides, "You agree that the underlying insurance policies listed below: (1) Are in force and will be continued in force for at least the limits shown. (2) Insure all land motor vehicles and watercraft owned by, rented by, or regularly furnished to you." The required underlying uninsured motorist coverage, maintained by Lenore Gunther but not by David Israel, is included among the listed policies that follow. David Israel asserts that the umbrella policy, when read as a whole, assigns multiple meanings to the word "you," and that, under Hansen v. Ohio Casualty Insurance Co., 687 A.2d 1262 (Conn. 1996), the ambiguity thus created must be construed against State Farm as the drafter of the contract.
 
 
 35
 Specifically, Israel argues that while the nine-page booklet defines "you" as any insured, the declarations page implicitly defines "you" more narrowly, as the named insured only--here, the Gunthers--and that the policy should therefore be interpreted to require only the named insured to maintain the underlying coverage set out on the declarations page. Israel's argument rests on several aspects of the declarations page. First, he points to the declarations page's termination provision, which states, "If this policy is terminated we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions or as required by law." Israel argues that here "you" cannot mean all insureds, since State Farm cannot be obligating itself to give notice to all relatives who may reside with the named insured, as it has no procedure to learn of the existence of these individuals in the absence of a claim. He also points out that while the declarations page notes in regard to the types of underlying policies required that "these terms are defined in the policy," the declarations page nowhere indicates that the word "you" is defined in the policy, thus suggesting that on the declarations page, "you" does not mean all insureds. Finally, Israel argues that the nine-page booklet's provision that "[i]n this policy, `you' and `your' refer to the insured as defined" (first emphasis added), suggests that this definition is not applicable to the declarations page. Were the declarations page to require all insureds to maintain underlying insurance, Israel asserts, it would refer to "you and all insureds." Instead the declarations page uses "you" to mean only Lenore and William Gunther, Israel argues, and so only the Gunthers are required to maintain the underlying insurance set out on the declarations page.
 
 
 36
 State Farm characterizes Israel's interpretation as tortured and in conflict with the clear meaning of the policy. It claims that the declarations page provision that "you" will be given notice of termination in compliance with the policy provisions simply indicates that notice will be delivered to the named insured's address, as provided in the policy. In such a case, State Farm argues, other insured residents of the household would receive notice of the canceled policy pursuant to the policy's provisions. State Farm also points to the declarations page's provision that "Your policy consists of this page, any endorsements and the policy form," and argues that this statement undermines Israel's attempt to read the declarations page separately from the policy's definition of "you."
 
 
 37
 In Hansen v. Ohio Casualty Insurance Co., the Connecticut Supreme Court found "you" to be ambiguous when a policy defined "you" as referring to the named insured--a small, family-held corporation--yet other parts of the policy used "you" as though the word referred to an individual, making reference to "your" family members, bodily injuries, and the like. See 687 A.2d at 1266. As a result of this ambiguity, the court held that the plaintiff, a shareholder in the closely-held corporation, was entitled to individual coverage under the policy. See id. at 1267. While there are superficial similarities between Hansen and the present case, in that the meaning of the word "you" is the focus of debate in both, the specific legal holding of Hansen seems inapplicable here, and it is not clear to us whether the case is appropriately read as embodying a general rule that insurers will be held to an exceptionally high standard of clarity in their use of the word "you." As a result, we are unsure of how broadly to construe the Hansen holding and are thus faced with the danger of either over-extending or inappropriately cabining it.
 
 IV. Appropriateness of Certification
 
 38
 Connecticut law allows for the certification of questions of state law by the federal courts directly to the Connecticut Supreme Court. We believe certain questions presented in this case should be certified to the Connecticut Supreme Court for several reasons. In certifying these questions, we exercise our own discretion. See Riordan v. Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 51 (2d Cir. 1992) (noting permissive language of Second Circuit rule). The Connecticut Supreme Court may reformulate these questions as it deems necessary or appropriate. See 1999 Conn. Acts 99-107, § 6(3) (Reg. Sess.).
 
 
 39
 First, we have found no Connecticut precedent directly addressing the questions presented in III.B and III.C above. Additionally, the questions involved in this appeal affect the interests of Connecticut insurers and policyholders, and given the absence of dispositive precedent on these issues, Connecticut "`has a strong interest in deciding the issue[s] certified rather than having the only precedent on point be that of the federal court, which may be mistaken.'" See Great N. Ins. Co. v. Mount Vernon Fire Ins. Co., 143 F.3d 659, 662 (2d Cir. 1998) (quoting Home Ins. Co. v. American Home Prods. Corp., 873 F.2d 520, 522 (2d Cir. 1989)). We find the strength of this interest particularly strong in this case, given Connecticut's established preeminence in the field of insurance law. See, e.g., Employers' Liab. Assurance Corp. v. Travelers Ins. Co., 411 F.2d 862, 863 (2d Cir. 1969) (noting that the Connecticut Supreme Court is "particularly expert" in insurance matters).
 
 
 40
 In sum, we believe that the questions we certify are unsettled and significant questions of state law that will control the outcome of this appeal, see 2d Cir. R. § 0.27, as to which there is no controlling precedent of the Connecticut Supreme Court. See 1999 Conn. Acts 99-107 (Reg. Sess.). For these reasons, we believe that resolution of the certified questions by the Connecticut Supreme Court would aid in the administration of justice.[Tabular or Graphical Material Omitted]
 
 
 
 NOTES:
 
 
 [1]
 State Farm Mutual Automobile Insurance Company (State Farm Mutual) is also a named defendant in this case. Israel does not appeal the district court's entry of summary judgment in favor of State Farm Mutual.
 
 
 [2]
 In this opinion, we use the term "umbrella policy" to refer to the policy as a whole, including the nine-page booklet titled "Personal Liability Umbrella Policy," the uninsured motorist addendum titled "Uninsured Motor Vehicle Coverage," the declarations page, and four pages of endorsements. A copy of the umbrella policy is attached hereto as Appendix A.
 
 
 [3]
 Mr. Root was not technically an uninsured driver; rather he was underinsured with regard to the losses sustained by David and Susan Israel. State Farm has nowhere argued that the umbrella policy's uninsured motorist coverage would not cover the losses occasioned by such an underinsured driver if all other conditions and requirements of the policy were met. We therefore assume that Mr. Root's status as an underinsured rather than an uninsured driver is not relevant to the question of State Farm's liability.
 
 
 [4]
 Israel did not formally file a cross-motion for summary judgment. However, during a pretrial telephonic conference with Judge Arterton, State Farm stipulated that if it did not prevail in its motion for summary judgment, Israel would be entitled to judgment as to State Farm's liability and the parties would proceed to the issue of damages.
 
 
 [5]
 In addition to the "Your Duties to Us" language, Israel points to two other policy provisions that he argues render the policy ambiguous. The "Other Conditions" section of the nine-page booklet states:
 If your required underlying insurance does not provide coverage for a loss because:
 a. it limits the amount it will pay in one year; or
 b. it provides coverage for a loss only if reported while that policy is in effect or within a time period after that policy's termination;
 you will be responsible for the underlying limit amount of any loss.
 (Emphasis in original.) In addition, a section of the umbrella policy headed "Uninsured Owned Vehicles" states:
 During the time that you cancel or suspend the underlying liability insurance covering vehicles insured by this policy, your duty to maintain underlying insurance is unchanged as explained in the policy section Your Duties to Us. You will be responsible for the amount of the required underlying insurance if a loss occurs.
 (Emphasis in original.)