**POLYGON INSURANCE COMPANY, LTD. and HELOG A.G., Plaintiffs,**

v.

**HONEYWELL INTERNATIONAL INC., Defendant.**

**No. 301CV00098AVC.**

United States District Court, D. Connecticut.

May 9, 2001.

## RULING ON THE PLAINTIFFS' MOTION TO REMAND

COVELLO, Chief Judge.

This is an action for damages. It is brought by the plaintiffs, Polygon Insurance Company, Ltd. ("Polygon") and Helog A.G. ("Helog"), against the defendant, Honeywell International Inc. ("Honeywell"), pursuant to the Connecticut Product Liability Act ("PLA"),[1] the Connecticut Unfair Trade Practices Act,[2] and the Connecticut Uniform Commercial Code.[3] Polygon and Helog bring the within motion to remand, asking the court to send this case back to Connecticut superior court based on the doctrine of abstention. Honeywell, who removed this action to federal court on January 19, 2001, objects.

The issue presented is whether the lack of consensus among Connecticut state trial courts concerning the definition of "commercial loss" under the PLA requires this court to remand this case to state court based on the abstention doctrines articulated in *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) and *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). As explained in more detail below, the court concludes that because the Polygon and Helog have failed to demonstrate that a decision by this court will be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial concern" and because the question of what constitutes "commercial loss" does not "bear on a policy prob-lem ... whose importance transcends the result in this case," abstention is not appropriate. Accordingly, the plaintiffs' motion to remand (document no. 7) is DENIED.

## FACTS

Examination of the complaint, the notice of removal, the plaintiffs' motion to remand, and Honeywell's opposition thereto discloses the following relevant facts:

Polygon is an alien corporation existing pursuant to the laws of Guernsey, Channel Islands. It is "in the business of providing insurance for the value of aircraft hulls, including helicopter hulls." Helog is also an "alien corporation existing ... pursuant to the laws of the Swiss Republic with its principal place of business in Kussnacht, Switzerland." It is engaged in the business of "helicopter heavy lift and logging operations." Honeywell is a Delaware corporation with its principal place of business in Morristown, New Jersey.

On December 1, 1997, Polygon and Helog entered into an insurance policy for the value of the hull of a "dual rotor, single engine, single seat helicopter" powered by an engine designed and manufactured by a corporation now owned by Honeywell.

On September 4, 1998, while performing aerial logging operations near Hindelang, Germany, the helicopter crashed. The complaint alleges that the crash was the result of an engine failure.

Approximately one month later, in October 1998, Polygon and other interested underwriters, paid Helog $2,204,560.00 pursuant to the insurance policy into which the parties had entered.

---

**1.** Connecticut General Statutes §§ 52–572m, *et seq.*

**2.** Connecticut General Statutes §§ 42–110a through 42–110q.

**3.** Connecticut General Statutes §§ 42a–1–101 *et seq.*

On January 5, 2001, the plaintiffs commenced the instant action against Honeywell in Connecticut superior court alleging that Polygon was forced to pay out $2,204,560.00 to Helog "[a]s a direct, substantial, and proximate result of [Honeywell's] acts and omissions[.]"

On January 19, 2001, Honeywell removed the action to federal court based on diversity of citizenship. On February 20, 2001, the plaintiffs filed the within motion to remand.

## DISCUSSION

The plaintiffs argue that abstention in this case is appropriate because: (1) one of their three causes of action implicates an "unsettled area of law in [Connecticut];" and (2) the court's decision in this area "will broadly impact state policy." Specifically, the plaintiffs assert that the third count of their complaint will require the court to determine what constitutes "commercial loss" under the PLA. Because there currently exists a split among the state trial courts on this question,[4] the plaintiffs reason, a decision by this court would result in a federal court having a broad impact on state policy, rather than a state court. Honeywell responds that "the mere possibility that this [c]ourt may be called upon to determine what constitutes 'commercial loss' under Connecticut law does not pose a difficult question of state law of substantial import." In addition,

Honeywell argues that, in any event, a decision by this court "would not have a broad impact on state policy beyond this case."

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). The United States Supreme Court has acknowledged several situations where abstention by a federal court is appropriate. *See, e.g., Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (holding abstention appropriate where resolution of federal constitutional question could be rendered unnecessary by state-court interpretation of ambiguous state law); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (holding abstention appropriate to avoid federal interference with essential state functions such as state criminal proceedings). The two abstention doctrines relevant here are the *Burford* and *Thibodaux* doctrines. *See Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Pursu-

---

4. *See Johnson v. Chalmers*, No. X07CV990074165S, 2000 WL 1868235, at *1 (Conn.Super.Nov.30, 2000) (describing definition of "commercial loss" under PLA "a subject of lively and disparate superior court analyses untutored by appellate direction"). Commercial loss is not within the scope of compensable harm under the PLA. Two interpretations of the term have evolved. The narrow interpretation, described in *Manufacturers Mutual Insurance Company v. Harrington Hoists, Inc.*, 1989 Conn.Super. LEXIS 34 (Conn.Super.1989), views "commercial loss"

as referring to lost profits or consequential economic damages, as opposed to property damage and personal injuries. *See id.* The broader construction equates commercial loss to "economic injury, whether direct, incidental, or consequential, including property damage and damage to the product itself incurred by persons regularly engaged in business activities ... consisting of providing goods or services in competition." *Producto Mach. Co. v. Ajax Magnethermic Corp.*, 1987 Conn.Super. LEXIS 120 (Conn.Super.1987).

ant to *Thibodaux* abstention, a federal court may refrain from exercising federal jurisdiction where "there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (citing *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959)). Under the *Burford* doctrine, abstention is appropriate to avoid interference with attempts to establish a coherent state policy in connection with complex issues of substantial local concern. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 332–34, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[5]

In *Louisiana Power & Light Company v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), the plaintiff city had filed a petition for expropriation in state court, asserting a taking of land, buildings, and equipment of the defendant company. *See id.* at 26, 79 S.Ct. 1070. After the defendant removed the case to federal court based on diversity jurisdiction, the federal court stayed the action to afford the supreme court of Louisiana the opportunity to address the previously uninterpreted state statute on which the city had based its expropriation. *Id.* at 26, 79 S.Ct. 1070. The United States Supreme Court noted that the district judge had responded "sensibly" to the problem facing him because an opinion of the state attorney general had recently held, in a "strikingly similar case," that another Louisiana city did not possess the same power that

the plaintiff city in *Thibodaux* claimed to have. *See Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 30, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). At the same time, however, the uninterpreted state statute at issue appeared to grant the city such power. *See id.* In affirming the district court's decision to abstain, the *Thibodaux* Court stated:

> The special nature of eminent domain justifies a district judge, when his familiarity with the problems of local law so counsels him, to ascertain the meaning of a disputed state statute from the only tribunal empowered to speak definitively—the courts of the State under whose statute eminent domain is sought to be exercised—rather than himself make a dubious and tentative forecast.

*Id.* at 29, 79 S.Ct. 1070.

In *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the plaintiff brought an action in federal court challenging the "reasonableness" of a decision by the Texas railroad commission to grant an oil drilling permit to the defendant oil company. *See id.* at 316–317, 63 S.Ct. 1098. Through its complaint, the plaintiff sought to have the federal court determine whether the state railroad commission had properly applied Texas' complex oil and gas conservation regulations. *See id.* at 331, 63 S.Ct. 1098. The defendant argued that the federal court should abstain from deciding the case because the state of Texas had an established, centralized system of review whereby state courts with "specialized knowledge" of the regulations governing

---

**5.** Polygon has brought the within motion based on the *Thibodaux* abstention doctrine, which, some courts have held, "is really a variant of the *Burford* abstention doctrine and has not evolved as a separate doctrine of its own." *Grode v. Mutual Fire, Marine and Inland Ins. Co.*, 8 F.3d 953, 957 (3rd Cir.1993).

The court need not determine whether this is the case as it ultimately concludes that, under either the plaintiffs' representation of *Thibodaux* abstention or under the *Burford* doctrine, it should not decline jurisdiction of this matter.

the oil industry would handle review of the railroad commission's decisions. *Id.* at 327, 63 S.Ct. 1098. Finding this system of state court review "expeditious and adequate," the Supreme Court held that federal court review of commission decisions would result in "[d]elay, misunderstanding of local law, and needless federal conflict with the state policy[.]" *Burford v. Sun Oil Co.*, 319 U.S. 315, 327, 334, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The Court concluded that "a sound respect for the independence of state action requir[ed] the federal equity court to stay its hand[.]" *Id.* at 334, 63 S.Ct. 1098.

■ Here, the court is not persuaded that the circumstances warrant the application of the abstention doctrines discussed in either *Burford* or *Thibodaux*. As described above, the plaintiffs place great weight on the split in the state trial court concerning what constitutes "commercial loss" under the PLA. Federal courts, however, are regularly called upon to decide both settled and unsettled questions of state law. *See, e.g., Rounds v. Rush Trucking Corp.*, 211 F.3d 185, 188 (2d Cir.2000) ("In deciding a disputed issue of state law in a diversity case, a federal [trial] court should attempt to discern what the highest court of that state would decide."); *Sternberg v. Zuckerman*, 821 F.Supp. 841, 844 (D.Conn.1993) ("[I]t is entirely proper for the federal court to exercise its own judgment in interpreting state law where neither the state's highest court nor the state's appellate court has spoken."). While there may be a lack of consensus in Connecticut's trial court as to the definition of commercial loss, "the mere fact that state law is difficult or uncertain is not in and of itself sufficient reason for federal courts to abstain." *Weiser v. Koch*, 632 F.Supp. 1369, 1378 n. 14 (1986); *see Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) ("We would negate the history of the enlargement of the jurisdiction of the federal district courts, if we held the federal court should stay its hand and not decide the question before the state courts decided it."); *Meredith v. City of Winter Haven*, 320 U.S. 228, 234–35, 64 S.Ct. 7, 88 L.Ed. 9 (1943) ("[D]enial of [the opportunity to decide questions of state law] by the federal courts merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state, would thwart the purpose of [diversity jurisdiction].").

■ Even assuming, as *Thibodaux* requires, that the question of state law addressed here is unclear, the plaintiffs still have the burden of demonstrating that the "difficult question[ ] of state law bear[s] on policy problems of substantial import whose importance transcends the result in [this case]." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (citing *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959)). The court fails to see how a decision addressing the definition of "commercial loss" under the PLA would have the required "transcend[ing]" effect. The plaintiffs have not shown how this court's interpretation of "commercial loss" would affect the rights of parties other than those involved in the instant case. Nor have they demonstrated how this court's construction of the term would have any broader impact than the individual, inconsistent decisions already rendered by the state trial courts in connection with this subject. In the event that this court has occasion to define "commercial loss," its interpretation will not prevent the Connecticut supreme court, or any other Connecticut court, from arriving at a contrary construction.

Also, the court finds it significant that in arriving at its ultimate conclusion to abstain in *Thibodaux,* the Supreme Court emphasized the "distinction between expropriation proceedings" at issue in that case and "ordinary diversity cases," such as the one currently before this court. *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). Eminent domain, the Court held, was "intimately involved with [the] sovereign prerogative," in a way that this court finds the PLA is not. *Id.* Moreover, this action represents a controversy between two private parties, whereas *Thibodaux* involved a municipality and, consequently, addressed state-specific issues like "the apportionment of governmental powers between City and State[ ]" in connection with a "determination of the nature and extent of delegation of the power of eminent domain[.]" *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 28, 79 S.Ct. 1070 (1959).

■ The plaintiffs' argument for abstention under the *Burford* doctrine is equally unavailing. Specifically, they have failed to show how a federal court's *construction* of a state *statute* (as opposed to a federal court's *review* of a state *agency's decision* ) would be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial concern." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (citing *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)). As set forth above, the Court in *Burford* affirmed the district court's decision to abstain based in large part on Texas' complex administrative system which "provided a unified method for the formation of policy and determination of cases by the [the state railroad commission] and by the state courts." *Burford v. Sun Oil Co.,* 319 U.S. 315, 333–34, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). A similar "unified method" is not present here. Moreover, unlike the statutory scheme presented in *Burford,* the plaintiffs have pointed to nothing in the PLA that suggests Connecticut state courts were intended to acquire "specialized knowledge" of the area of product liability law. *See id.* at 327, 63 S.Ct. 1098 (noting that concentration of state judicial review of railroad commission orders in one state district court "permit[ted] the state courts ... to acquire a specialized knowledge which is useful in shaping the policy of regulation of the ever-changing demands in [the oil industry].").

As the Second Circuit recently confirmed, the *Burford* abstention seeks to avoid the danger of "creating an opportunity to overturn a prior state court or agency determination by seeking federal court review[.]" *Dittmer v. County of Suffolk,* 146 F.3d 113, 116 (2d Cir.1998). Such a danger is not present in this case. The crux of the plaintiffs' argument in support of abstention is not that the federal court will be required to *review* a state court or state agency's determination of state law, but only that it will have to *interpret* such state law.[6] As noted above, the latter represents a task for which federal courts are perfectly suited. For these reasons,

---

**6.** The court notes that refusing to abstain at this juncture does not foreclose the possibility that Connecticut state courts will ultimately decide the question of what constitutes "commercial loss" under the Connecticut Product Liability Act. This court has the authority, in certain situations, to certify unsettled questions of state law to the state supreme court. *See Israel v. State Farm Mut. Auto. Ins. Co.,* 239 F.3d 127, 135 (2d Cir.2000) ("Connecticut law allows for certification of questions of state law by the federal courts directly to the Connecticut Supreme Court.").

the court concludes that abstention under *Burford* is not appropriate.

## CONCLUSION

Based on the foregoing reasons, the plaintiffs' motion to remand (document no. 7) is DENIED.